WILKINS, Circuit Judge:
 

 Linda Gale Motley appeals an order of the district court holding that assessments imposed by the Commissioner of the Virginia Department of Motor Vehicles (“the Department”) are excise taxes for purposes of 11 U.S.C.A. § 507(a)(7)(E) (West Supp. 1990) and, therefore, are not debts dis-chargeable in bankruptcy pursuant to 11 U.S.C.A. § 523(a)(1)(A) (West Supp.1990). We affirm in part and reverse in part.
 

 I.
 

 •In October 1987 the Department suspended Motley’s vehicle registration and driving privileges because she did not furnish evidence of liability insurance in connection with the operation of her vehicle. The Department refused to restore these privileges until Motley paid a $300 uninsured motor vehicle assessment imposed upon individuals who seek to register an uninsured vehicle or who fail to demonstrate that a registered vehicle is covered by liability insurance. The Department also imposed a $10 fee for service of the notice of suspension. In February 1988 the Department issued another order of suspension as a result of Motley’s operation of another vehicle registered to her and imposed an additional $300 uninsured motor vehicle assessment.
 

 Motley filed a petition for relief under Chapter 7 of the Bankruptcy Code in November 1988 and listed the Department as an unsecured creditor. Through an adversary proceeding, she sought the discharge of the uninsured motor vehicle assessments and the service fee. In addition, she claimed that once these amounts were discharged she was entitled to the restoration of her registration and driving privileges. The bankruptcy court found that these obligations were dischargeable. The district court reversed, holding that the uninsured motor vehicle assessments and service fee were nondischargeable excise taxes. Appeal to this court followed.
 

 II.
 

 The Commonwealth of Virginia does not mandate liability insurance coverage, but does require that an individual pay an uninsured motor vehicle assessment in order to
 
 *743
 
 operate an uninsured vehicle. Va.Code Ann. § 46.2-706 (1989). These assessments create a fund that is distributed among insurance companies that provide automobile liability insurance in Virginia. Va.Code Ann. § 38.2-3001 (1990). Although insurance is not mandatory, all motor vehicle liability insurance policies issued in Virginia must contain uninsured motorist insurance coverage. Va.Code Ann. § 38.2-2206(A) (1990). The uninsured motor vehicle assessment is intended to reduce the cost of uninsured motorist insurance coverage. Va.Code Ann. § 38.2-3000 (1990). While the uninsured motor vehicle assessment is generally collected upon registration of an uninsured vehicle, it also may be imposed whenever a vehicle becomes uninsured. Va.Code Ann. § 46.2-706 (1989). Sanctions for failure to pay the uninsured motor vehicle assessment when required include the revocation of registration and driving privileges.
 
 Id.
 

 III.
 

 A discharge of debts in bankruptcy does not discharge an individual debtor from certain statutorily enumerated categories of debts.
 
 See
 
 11 U.S.C.A. § 523 (West 1979 & Supp.1990). Section 523(a)(1)(A) of the Bankruptcy Code renders certain taxes specified in section 507(a)(7) nondischargeable. Because one of the specified taxes is an excise tax, 11 U.S.C.A. § 507(a)(7)(E) (West Supp.1990), the uninsured motor vehicle assessment would not be dischargeable if it falls into this category.
 

 In the absence of a statutory definition, the Supreme Court has defined taxes as “pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.”
 
 City of New York v. Feiring,
 
 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). The following elements generally characterize a tax:
 

 (a)An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
 

 (b) Imposed by, or under authority of the legislature;
 

 (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
 

 (d) Under the police or taxing power of the state.
 

 New Neighborhoods, Inc. v. West Virginia Workers’ Compensation Fund,
 
 886 F.2d 714, 720 n. 7 (4th Cir.1989) (recognizing the widely cited test developed in
 
 In re Farmers Frozen Food Co.,
 
 221 F.Supp. 385 (N.D.Cal.1963)).
 
 See also In re South Atlantic Packers Ass’n, 28
 
 B.R. 80, 82 (Bankr.D.S.C.1983). While the parties agree that the uninsured motor vehicle assessment satisfies paragraphs (b) and (d), Motley claims that the requirements set forth in paragraphs (a) and (c) of the
 
 Farmers Frozen Food
 
 test are not satisfied and thus the assessment is dischargea-ble.
 

 IV.
 

 A.
 

 When a public agency permits an applicant to engage in a voluntary activity, the charge exacted by the agency for the privilege is a fee rather than a tax.
 
 National Cable Television Ass’n v. United States,
 
 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974). The grant of permission “bestows a benefit on the applicant ... not shared by other members of society.”
 
 Id.
 
 at 341, 94 S.Ct. at 1149. Motley argues that the uninsured motor vehicle assessment is not a tax because it is a payment incident to a voluntary act that confers a benefit solely on her. She contends that the uninsured motor vehicle assessment is imposed as a condition to registering her car or restoring her driving privileges and that her choice to engage in these activities is completely voluntary. She claims that in the event she seeks to register her car or to have her driving privileges restored, the benefit received from her payment of the uninsured motor vehicle assessment is a personal one.
 

 This argument, however, ignores the subtle distinction between charges paid in
 
 *744
 
 order to obtain permission to engage in a voluntary activity, which bestow a benefit solely on the applicant, and assessments exacted in connection with engaging in an activity, which confer a benefit on the individual no greater than that enjoyed by society.
 
 See United States v. River Coal Co.,
 
 748 F.2d 1103, 1106 (6th Cir.1984) (reclamation fee imposed upon strip mine operators is an excise tax);
 
 Spiers v. Ohio Dept. of Natural Resources (In re Jenny Lynn Mining Co.),
 
 780 F.2d 585, 588 (6th Cir.) (strip mining permit fee not excise tax),
 
 cert. denied,
 
 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). The
 
 River Coal
 
 court recognized this distinction when it was called upon to decide whether a reclamation fee imposed upon strip mining companies was a fee or an excise tax. The court reasoned that, unlike the permit fee paid to obtain the right to conduct a strip mining operation, a reclamation fee did not confer a benefit on an operator different from that enjoyed by the general public when environmental conditions are improved. The court found the reclamation fee to be an excise tax because it was an involuntary exaction for the public purpose of creating a fund to be used for environmental reclamation. 748 F.2d at 1106.
 

 A similar distinction exists between the uninsured motor vehicle assessments and the nominal fees imposed by the Department on residents of Virginia who wish to obtain registration or driving privileges. While each applicant must pay this nominal fee in order to obtain registration and driving privileges, these privileges may be obtained without payment of the uninsured motor vehicle assessment if the applicant furnishes evidence of liability insurance coverage.
 
 *
 
 The uninsured motor vehicle assessment, which may substitute for insurance coverage, creates a fund that benefits the general public by reducing the overall cost of uninsured motorist insurance coverage. We conclude that the uninsured motor vehicle assessment is an involuntary exaction rather than a payment to receive permission to engage in a voluntary activity.
 

 B.
 

 Motley also contends that the uninsured motor vehicle assessment does not meet subsection (c) of the test. She argues that, since the uninsured motor vehicle assessment is received by the Department and passed directly to insurance companies, it serves no public purpose and does not defray governmental costs. This court rejected a similar argument in
 
 New Neighborhoods,
 
 886 F.2d at 718-19. Analyzing whether premiums due to the West Virginia Workers’ Compensation Fund were excise taxes for purposes of section 507(a), the court stated:
 

 The “public” purpose of systems such as the one in force and effect in West Virginia is to allocate the burden of the costs of injured employees and/or their dependents among employers rather than among the general public. While that purpose may be thought of as a funding mechanism for a specific state undertaking — that of providing for injured employees and their dependents — that in no way alters the fact that funds collected through the system serve a public purpose of compensating those employees who otherwise might require public support if their common law tort claims could not be successfully asserted.
 

 Id.
 
 (citations omitted). Similarly, the purpose of the Virginia uninsured motorist scheme is “compensation to an injured party who was not at fault and who cannot afford to bear the loss which he has suffered.”
 
 Travelers Indem. Co. v. Wells,
 
 209 F.Supp. 784, 792 (W.D.Va.1962),
 
 rev’d on other grounds,
 
 316 F.2d 770 (4th Cir.1963). Virginia seeks to further this goal by offsetting the cost of uninsured motorist insurance coverage thereby encouraging drivers to obtain this type of insurance.
 

 The uninsured motor vehicle assessment exhibits each of the characteristics of an excise tax within the
 
 Farmers Frozen Food
 
 test. It is an involuntary pecuniary burden levied upon uninsured motorists for
 
 *745
 
 a proper governmental purpose. It is an excise tax for purposes of section 507(a)(7)(E) and thus is nondischargeable in bankruptcy under section 523(a)(1)(A).
 

 V.
 

 Motley also contends that the $10 service fee is dischargeable because section 523(a)(7) provides that a debt is nondischargeable “to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit,
 
 and is not compensation for actual pecuniary loss.”
 
 11 U.S.C.A. § 523(a)(7) (West 1979) (emphasis added). The service fee is imposed “whenever the Department directs a sheriff to effect service of a decision, order, or notice.” Va.Code Ann. § 46.2-370 (1989). The fee is intended “to partially defray the cost of administration incurred by the Department and the Commissioner.” Id. Because the service fee is in the nature of a penalty and is assessed to defray the administrative cost associated with serving the notice, it is not excluded from the discharge provisions by section 523(a)(7). See,
 
 e.g., Caggiano v. Office of the Parking Clerk (In re Caggiano),
 
 34 B.R. 449 (Bankr.D.Mass.1983) (“surcharges” to recover administrative costs of registrar making proper records dischargeable);
 
 cf. Kelly v. Robinson,
 
 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (restitution obligations made condition of probation in state criminal conviction nondischargeable).
 

 VI.
 

 For the foregoing reasons, we hold that the statutory uninsured motor vehicle assessment that the Department imposes upon uninsured drivers is an excise tax within the meaning of section 507(a)(7)(E). Motley’s debt to the Department arising from the imposition of the uninsured motor vehicle assessment is nondischargeable in bankruptcy. 11 U.S.C.A. § 523(a)(1)(A). The service fee, however, is imposed to defray administrative costs and is, therefore, not excluded from the discharge provisions by section 523(a)(7).
 

 AFFIRMED IN PART AND REVERSED IN PART.
 

 *
 

 In addition to evidence of insurance coverage, residents may demonstrate financial responsibility in other ways.
 
 See
 
 Va.Code Ann. § 46.2-705 (1989).