268 N.J. Super. 577 (1993)
634 A.2d 139
L.C. MC GARRAH (A/K/A T.C. MC GARRELL), PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1993.
Decided December 7, 1993.
*579 Before Judges PRESSLER, DREIER and BROCHIN.
Anthony B. Vignuolo, argued the cause for appellant (Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, attorneys; Mr. Vignuolo and Eileen M. Foley, on the brief).
Valerie L. Egar, Deputy Attorney General, argued the cause for respondents (Fred DeVesa, Acting Attorney General of New Jersey, attorney; Mary C. Jacobson, Senior Deputy Attorney General, of counsel; Ms. Egar, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
On June 20, 1987, L.C. McGarrah was convicted of violating N.J.S.A. 39:4-50.4a by refusing to submit to a breathalyzer test. His New Jersey driver's license was suspended for two years pursuant to N.J.S.A. 39:4-50.4a, and he was required to pay an *580 insurance surcharge of $1000 a year for three years. N.J.S.A. 17:29A-35b(2)
To date, Mr. McGarrah has paid only $305 in total on account of the surcharge. His driver's license has therefore been suspended "until the surcharge is paid to the Division of Motor Vehicles ...." Ibid. According to the terms of the statute, "upon satisfactory showing of indigency, the Division of Motor Vehicles may authorize payment of the surcharge on an installment basis over a period not to exceed 10 months." Ibid. To regain his driver's license immediately by taking advantage of this installment plan, Mr. McGarrah would, according to the Division's calculations, have to make an initial payment of $715 and then pay $198 a month for ten months[1]. Alternatively, the Division would accept whatever payments Mr. McGarrah makes and would restore his driving privileges when he has paid the full amount of the surcharge.
Mr. McGarrah claims  and we accept his claim for the purpose of this opinion  that his sole income, which he depends on for the support of himself and his minor son, is $523.80 a month. Consequently, he cannot pay the balance which he owes for the surcharges either in ten monthly installments or within any foreseeable additional time. His license therefore remains suspended and, he contends, will continue to be suspended indefinitely.
The substance of Mr. McGarrah's argument is that, as applied to him, conditioning the restoration of his driver's license on his paying a $3000 insurance surcharge either in ten monthly installments within ten months of its suspension or in full over some longer period deprives him of his rights to due process and to equal protection of the laws. His rights to procedural due process were violated, he claims, because he was not accorded a hearing at *581 which to prove that his inability to pay the surcharge within a ten-month period would prevent him from regaining his license at the end of its two-year suspension. Mr. McGarrah claims that his rights to substantive due process were violated because, even if he had been given a hearing and had proved his indigency, N.J.S.A. 17:29A-35b(2) would not provide him with any relief. He is deprived of equal protection of the laws, he claims, because making the time when a suspended driver can regain his license dependent solely on the driver's ability to pay the surcharges is arbitrary and unreasonable.
We reject these arguments and therefore affirm.
Procedural due process requires that someone faced with the deprivation of a significant right be accorded the opportunity for a hearing at which to prove material, contested facts. Mathews v. Eldridge, 424 U.S. 319, 332-35, 96 S.Ct. 893, 901-02, 47 L.Ed.2d 18, 31-33 (1976). If there are no material facts in dispute, a hearing is useless and unnecessary. See Dixon v. Love, 431 U.S. 105, 113-15, 97 S.Ct. 1723, 1727-29, 52 L.Ed.2d 172, 180-81 (1977) (there is no right to a hearing or other procedure in connection with suspension of a driver's license where the revocation is based on violations of traffic laws which have been established through the judicial process). In the present case, Mr. McGarrah was offered a hearing. Presumably he did not accept the offer because, under the statutory scheme, there were no material facts in dispute. Proof of his indigency would not have authorized the Division of Motor Vehicles to restore his license upon any condition more favorable to him than the ten-month installment plan provided by the statute.
The insurance surcharges imposed pursuant to N.J.S.A. 17:29A-35(b) are modeled on those previously assessed by the private insurance industry. Dept. of Law & Public Safety v. Bigham, 119 N.J. 646, 652-55, 575 A.2d 868 (1990). They were intended to remedy the previously prevailing lack of uniformity in surcharges assessed by different companies, and they are assessed for motor vehicle offenses which involve dangerous driving practices *582 and driver irresponsibility. Ibid. These surcharges were designed to place the added costs of insurance generated by poor driving on the high risk drivers. Matter of Johnson, 226 N.J. Super. 1, 7, 543 A.2d 454 (App.Div. 1988) As we pointed out in Clark v. New Jersey Div. of Motor Vehicles, 211 N.J. Super. 708, 711, 512 A.2d 588 (App.Div. 1986), "[i]n view of the carnage caused by persons driving while intoxicated, the surcharges can hardly be said to be excessive."
These considerations furnish a rational basis for the insurance surcharges imposed by N.J.S.A. 17:29A-35(b)(2). Although these surcharges necessarily affect an indigent driver differently from an affluent driver, statutes which have a disparate effect on the rich and the poor are not, for that reason alone, subject to strict scrutiny. Barone v. Department of Human Services, 107 N.J. 355, 369, 526 A.2d 1055 (1987). Such a challenged classification will survive attack both on equal protection and substantive due process grounds if the classification is rationally related to a legitimate governmental purpose. See Brown v. City of Newark, 113 N.J. 565, 574, 552 A.2d 125 (1989) (in cases involving neither a fundamental right nor a suspect classification, a law will be deemed to satisfy equal protection requirements if it is "rationally related to a legitimate state interest"); Greenberg v. Kimmelman, 99 N.J. 552, 563, 494 A.2d 294 (1985) (a statute supported by a conceivable rational basis will withstand a substantive due process attack).
We disagree with our concurring colleague's view that the legislature has evidenced a lack of compassion by failing to reduce the surcharge or extend the payment period for impecunious drunk drivers. Drunk drivers cause a disproportionately large share of serious motor vehicle accidents. Consequently, they are also disproportionately responsible for the high liability insurance premiums paid by all drivers. The insurance surcharge shifts part of the cost of drunk driving to those responsible. The legislature could reasonably have concluded that means-testing the insurance surcharge for drunk driving would be tantamount to *583 providing a subsidy to impecunious drivers for this particular kind of anti-social behavior. We do not believe that the legislature's refusal to do so can fairly be branded as lacking compassion.
The brief on Mr. McGarrah's behalf concedes that there is a rational basis for imposing an insurance surcharge for alcohol-related driving offenses. Mr. McGarrah does not claim that the amount of the surcharge is so excessive as to be irrational. Instead, his substantive due process attack is directed solely against the statutory provision which requires payment of each annual surcharge over a period of no more than ten months. However, that requirement clearly has a rational basis. Enabling the State to revoke a driver's license during the period for which the delinquent surcharge has been assessed, before the driver must begin paying the next year's surcharge, certainly facilitates enforcement and therefore satisfies the rational basis requirement.
The order appealed from is affirmed.
DREIER, J.A.D. (concurring).
I concur with the decision reached by the court only because constitutional precedent so requires.
A person of at least moderate means can survive the period of license suspension, pay the surcharge and then continue to be licensed to drive. The plaintiff in the case before us, however, lives on an income below the poverty level on which he supports himself and his child. He cannot, by any stretch of the imagination, pay the surcharge except by taking the money from an amount already inadequate to pay for his and his son's food, clothing and shelter. The alternative statutory remedy of paying the surcharge in ten monthly installments is as meaningless to him as paying the amount in a lump sum.
I recognize that the State has a right to penalize stringently those who drive while intoxicated, as well it should. But the insurance surcharge itself is an anomaly. Insurance is purchased in this State to cover vehicles, not operators. Defendant is not *584 seeking to register a vehicle with or without insurance. All that is at stake here is defendant's right to operate a vehicle, recognized by our Supreme Court as being sufficiently akin to a right, rather than a privilege, that the elements of due process attach to a license revocation. Bechler v. Parsekian, 36 N.J. 242, 256-257, 176 A.2d 470 (1961).
We are not discussing the suspension of licenses because of a DWI conviction. No one disputes that such a suspension is proper. Nor are we here concerned with the State's right to impose a fine, here denominated an insurance surcharge,[1] upon the offender. Were the surcharge phrased as a criminal fine, N.J.S.A. 2C:44-2a(2) and c(1) would require that the court take into consideration a defendant's ability to pay. There is, however, no means test here to establish the amount of the surcharge, or even a power to use a means test to extend the payments beyond the statutory ten months. Defendant's poverty absolutely prevents his relicensure.
The same situation would be presented if the relicensing condition were placed at $50,000 per year for three years. The difference is that the affected class would increase. The rich would be relicensed; the middle class would either not drive or be forced to choose between retirement, college savings or their homes and the operation of their cars. The relative wealth or poverty of the driver still would dictate the result. The amount is changed, but the principle remains the same. The fact that fewer individuals are affected by the current plan makes the statute no less oppressive to those who cannot pay.
Defendant's poverty will prevent him from operating a motor vehicle for the foreseeable future. Even if he could contribute five dollars per week to the fee, it would be over eleven years before *585 he could drive, an unreasonably harsh proposition. His alcohol problem may be conquered; he can attend all of the rehabilitative classes prescribed by law; but unless he pays the thousands of dollars required of him, an impossibility, his license will not be restored. This is not a case of keeping drunk drivers off the road; rather, it is a case of differentiating between similar drivers, some whose licenses will be restored and others whose licenses will continue to be suspended based solely upon their poverty.
I realize that it is not within our power to find that poverty is a suspect classification, and that the imposition of the surcharge without a means test bears some rational relationship to the problem addressed. Petitioner may therefore not be found to have been denied equal protection of the law by the Legislature's failure to include a means test in the imposition of the surcharge. If we posit that those who now pay will not be excluded by a means test, and those who cannot pay will not affect the amounts now collected, then a means test will have no negative effect on the Legislature's program to fund the insurance deficit caused by drunken driving. But the Legislature has the right to avoid setting up an adjudicative process to establish the periodic payment amount for each poor defendant, and to force indigent payors to find the required sums. The total return to insurers is maximized. Thus a thin rational basis for the statute exists.
Where I differ from my colleagues is that they see the surcharge itself as rationally based on the problem faced by the State with the cost of damages from drunken drivers. I agree, but see the problem posed here as the effect on payors such as plaintiff.
On a humanitarian basis, a means test should be added to the statute for those defendants who cannot meet the ten-month payment schedule, and the Division of Motor Vehicles should be permitted to restore a driver's license if such a schedule were adhered to by an appropriately-classified driver. I commend this problem to the Legislature for compassionate review.
NOTES
[1] Mr. McGarrah's license has also been suspended for failure to pay parking tickets and, the record suggests, perhaps because of one or more other motor vehicle violations also. For the purpose of this opinion, we accept his attorney's representations that if we order removal of the impediment presented by Mr. McGarrah's nonpayment of his insurance surcharges, he is prepared to satisfy whatever other unpaid obligations would prevent his regaining his license.
[1] The surcharge is imposed upon all, irrespective of whether they have insurance. It has most of the attributes of a fine, except that it is dedicated to a specific purpose. From the aspect of the defendant, it is a fine that follows the DWI conviction.