**Annette MARKS, Kathleen Towson, Matthew Wissinger, James Deffler, Joan Walters, Individually, and on Behalf of a class of all others similarly situated, Plaintiffs,**

**v.**

**Clifford W. SNEDEKER, Director of The Division of Motor Vehicles, Joseph F. Murphy, Comm'r of Insurance, Kenneth R. Biederman, Treasurer of the State of New Jersey, and the New Jersey Automobile Full Insurance Underwriting Ass'n., Defendants.**

**Civ. A. No. 84–1393.**

United States District Court,
D. New Jersey.

July 11, 1985.

Philip Stephen Fuoco (argued), Haddon-field, N.J. and Gorelick & Groon, P.C. by Thomas Rossi, on brief, North Wildwood, N.J. and George H. Piperno, Haddonfield, N.J., for plaintiffs.

Irwin I. Kimmelman, Atty. Gen. of N.J. by Patrick J. Hughes, Deputy Atty. Gen. (argued), John J. Hayden, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

COHEN, Senior District Judge:

This action, challenging the constitutionality of portions of the New Jersey Insurance Reform Act of 1982 and the New Jersey Automobile Full Insurance Availability Act, N.J.Stat.Ann. 17:29A–33 et seq. and N.J.Stat.Ann. 17:30E–1 et seq. respectively (hereinafter the Reform Act), is before the Court on plaintiffs' motion for class certification and defendants' cross-motion for summary judgment or dismissal on abstention grounds. After a thorough consideration of the relevant facts and law, and for the reasons which follow, we shall dismiss the action on grounds of abstention.

## INTRODUCTION

In order to understand our decision to abstain, it is necessary to become familiar with New Jersey's automobile insurance laws as they existed prior to the enactment of the Reform Act and thereafter. Prior to January 1, 1983, the effective date of the Reform Act, an individual convicted of a drunken driving offense was subject to *criminal* penalties imposed by the State including fines, points on the license, license suspension or revocation, or imprisonment. *See e.g.* N.J.Stat.Ann. 39:4–50 *et seq.* (West Supp.1984–85). In addition to these criminal penalties, a driver would almost inevitably be required, by his or her insurance carrier, to pay an insurance surcharge for a period of three years in order to compensate the insurer for the added risk posed by a driver with a history of drunken driving. Due to the complex nature of this previous statutory and regulatory scheme, insurance rates varied dramatically throughout the state dependent upon a driver's individual characteristics and the primary location of the automobile.[1] *See* Affidavit of J. Richard Boer, Exhibit A. In addition to being subject to significant rate discrepancies, drivers throughout New Jersey were often unable to obtain insurance coverage, despite a good driving record, due to the perceived lack of profitability for insurance carriers in New Jersey and their resultant decisions to discontinue writing new policies. *See* "Karcher, Overview of no-fault auto insurance," New Jersey Lawyer, No. 111 May 1985 at 8.

In an attempt to remedy the deficiencies in the State's automobile insurance system, the legislature has enacted numerous statutory provisions[2] which significantly overhaul the system and create a new and similarly complex scheme designed to provide insurance which "will be affordable, available, and more equitable to the motorists [throughout the] State ...". N.J.Stat.

---

1. For example, a young male driver located in suburban Trenton without any motor vehicle convictions and with basic coverage would have paid, in 1983, $1,842 for insurance. The same individual located in Jersey City would have paid $2,920 while the same person, if located in Newark, would have paid $4,296.

2. Among the other statutes enacted were The New Jersey Insurance Fraud Prevention Act, N.J.Stat.Ann. 17:33A–1 et seq. (West 1985) and The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 which is codified in various sections of Titles 17 and 39 of N.J.Stat.Ann.

Ann. 17:29A–34(j) (West 1985). A number of the reform provisions enacted are at issue here.

As a result of the Reform Act, individual insurance companies are no longer allowed to collect surcharges from motorists. Instead, a driver convicted of a drunken driving offense is billed directly by the State's Division of Motor Vehicles (DMV) which collects the surcharges and then disburses them to the New Jersey Automobile Full Insurance Underwriting Association (the Association) pursuant to N.J.Stat.Ann. 17:29A–35(b)(2) (West 1985).[3] Underlying the removal of the surcharge system from the control of the individual insurance carriers is the need to eliminate the added insurance risk of drunken driving from rate calculations. This effort to standardize the insurance surcharge, resulting from drunken driving offenses statewide, is an integral component of the reform effort.

Plaintiffs allege that the imposition of the surcharge under the Reform Act constitutes an *ex post facto* law and is a violation of their due process rights as well as certain unspecified State Constitutional rights. They seek a declaration that the Reform Act is violative of both the United States and New Jersey Constitutions, an injunction of its enforcement as it applies to them, an accounting of monies received and dispersed under the Reform Act, the return to them of monies paid, damages, and such other relief as this Court may deem just and equitable. In response, defendants have brought the instant motion for abstention in support of which they rely on the doctrine as articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

## DISCUSSION

■■■■ Although abstention is a "narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959)), it is appropriate under certain circumstances where litigation in the state court "would clearly serve an important countervailing interest." *Id.* One of the situations appropriate for abstention exists

where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 [79 S.Ct. 1070, 3 L.Ed.2d 1058] (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. *See also Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593 [88 S.Ct. 1753, 20 L.Ed.2d 835] (1968); *Hawks v. Hamill*, 288 U.S. 52 [53 S.Ct. 240, 77 L.Ed. 610] (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In *Burford v. Sun Oil Co.*, 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424] (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and

---

**3.** The Association, created pursuant to N.J.Stat. Ann. 17:30E–4 (West 1985), is an unincorporated, nonprofit association made up of all insurers licensed to transact automobile insurance in New Jersey. Among the powers and duties of the Association is the capacity to "[a]rrange for the issuance of automobile insurance to any qualified applicant through servicing carriers." N.J.Stat.Ann. 17:30E–7 (West 1985). In effect, the Association replaced the former "assigned risk pool." Nevertheless, it may write insurance for any qualified driver and not just those who present a high risk.

future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. *See also Alabama Pub. Serv. Comm'n v. Southern R. Co.,* [341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951)].

*Colorado River,* 424 U.S. at 813–15, 96 S.Ct. at 1244–1245 (footnotes omitted).

As in *Burford,* the "exercise of federal review of the question in [this] case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244.

■ In opposing defendants' motion, plaintiffs maintain that we need only be concerned with the "narrow issue of the constitutionality of the *retroactivity of the penalties*" thus not requiring that we consider a complex and technical regulatory scheme of the State of New Jersey. Plaintiffs' Brief at 9 (emphasis added). Plaintiffs' argument, however, begs the question. Before addressing the constitutionality of the "retroactivity of the penalties," the Reform Act must be interpreted to determine whether the surcharges actually apply retroactively *and* whether they constitute a penalty. The resolution of these questions could have a significant disruptive effect on New Jersey's newly reformed automobile insurance program which is unquestionably a "matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. In addition, the resolution of these issues will involve an in-depth analysis of the legislative purposes which underlie a major reform effort in an area of law—insurance—which has typically been left to the states to regulate. Thus, significant questions of public policy are inextricably involved in any consideration of these issues. Initial consideration of these policy issues is typically best left to state entities. In this case, the interest of both the state legislature and judiciary is manifest.

Plaintiffs' motion for class certification was initially returnable before this Court on September 7, 1984. At the request of both parties, however, the motion was adjourned on numerous occasions in the hope that the New Jersey Legislature would resolve the retroactivity issue, thus, rendering this case moot. At oral argument, the Court was informed that, for political reasons apparently not connected with the surcharge scheme, the legislative proposal intended to remedy the present situation is, in the words of the State's attorney, "dead." Although this initial attempt at a legislative resolution to the instant controversy has failed, other legislative measures, which are provided by the Reform Act itself, are yet to be exercised.

The Reform Act created a joint legislative committee to "monitor[ ] and evaluat[e] the effectiveness of the implementation of [the surcharge system], and said joint committee shall, as it may deem appropriate, issue recommendations for administrative or legislative changes affecting the implementation of [the] act." N.J. Stat.Ann. 17:29A–41 (West 1985). Moreover, the Reform Act created a study commission designed to evaluate market conditions resulting from the implementation of the reforms with respect to

> market availability, affordability and equity of automobile insurance coverage; the operation and effectiveness of the modified two tier rating system including the effectiveness and adequacy of merit rating plans *and surcharge systems*; ... the effectiveness and fairness of the New Jersey Automobile Full Insurance Underwriting Association, *including the adequacy and fairness of its funding system;* and the creation of genuinely competitive market conditions.

N.J.Stat.Ann. 17:30E–23 (West 1985) (emphasis added). The study commission's findings and recommendations regarding improvements in the reforms are to be reported to the Governor and Legislature no later than January 1, 1987. *Id.* The continuing involvement of the state legislature, *vis-a-vis* the joint committee and the

study commission, clearly counsels in favor of our abstention in this matter.

Of even greater importance, however, is the fact that the regulations promulgated pursuant to the Reform Act have created an expedited appeals process whereby an individual challenging the application of the surcharge goes immediately to the Appellate Division of the New Jersey Superior Court following administrative review by the Division of Motor Vehicles. *See* N.J. Admin.Code 13:19–12.1 *et seq.* *See also* N.J.Stat.Ann. 52:14B–9 through 14. (West Supp.1984–85). In fact, at the present time, at least eight cases are before the Appellate Division challenging the surcharge system on grounds identical to those presented here.[4] Thus, in light of *Burford v. Sun Oil Co.* and in the interests of comity, we shall dismiss plaintiffs' complaint.

We feel constrained to note two additional factors which support our decision and which are involved with any perceived need on the part of plaintiffs for a federal review of their claims. First, an Administrative Law Judge (ALJ) has held the surcharge system to be an unconstitutional denial of due process as a result of it being harsh, oppressive and retroactive; although the ALJ's decision on the system's constitutionality was overturned on final review by the DMV, the result indicates that plaintiffs need not fear receiving a biased hearing from the state's judiciary. Secondly, if plaintiffs receive an unfavorable ruling from the Appellate Division, they have recourse to the State Supreme Court and, if necessary, they can seek federal review from the United States Supreme Court.

In light of our decision to abstain, it is unnecessary to consider plaintiffs' motion for class certification. The Court shall enter an appropriate order.

4. The eight cases of which we are aware are those of Harry Ryan, Docket No. A–2432–84T7; Elaine M. Berger, Docket No. A–2431–84T6; Diane M. Vilardo, Docket No. A–2805–84T7; Robert L. Walukiewicz, Docket No. A–2991–84T7;

ORDER

This matter having come before the Court on the motion of plaintiffs, ANNETTE MARKS, *et als.*, for class certification and the cross-motion of defendants, CLIFFORD W. SNEDEKER, *et als.*, for summary judgment or dismissal on grounds of abstention; and

For the reasons stated in the Court's opinion filed this date;

It is on this 11th day of July, 1985 ORDERED that defendants' motion to dismiss on grounds of abstention be and hereby is granted.

Steven Koerner, Docket No. A–2785–84T7; Frederick Eldridge, Docket No. A–2656–84T7; William J. Crerand, Docket No. A–2532–84T7; and James Cuabello, Docket No. A–2964–84T7. *See* Defendants brief at 17.