568 A.2d 1144

**INSURANCE COMMISSIONER OF the STATE of Maryland, et al.**

v.

**Susan R. NEVAS.**

**No. 657, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 5, 1990.

Randi F. Reichel, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant, Ins. Com'r.

Alan N. Gamse (Donna L. Jacobs and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant, Harleysville Mut. Ins. Co.

Susan R. Nevas, Chevy Chase, for appellee.

Argued before GARRITY, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

In this appeal, we are asked to define the burden of persuasion placed upon an insurer under Article 48A of the Annotated Code of Maryland (Insurance Code),[1] in a hearing before the Insurance Commissioner to justify a proposed non-renewal or cancellation of an insured's coverage. The pertinent facts are set forth below.

On May 2, 1988, Susan R. Nevas, the appellee, received a notice from Harleysville Mutual Insurance Company (Harleysville), the appellant, that her automobile liability insurance would not be renewed by Harleysville when her policy expired. The reason given for the refusal to renew was "two at-fault accidents," one on September 28, 1985 and one on December 10, 1986. The notice stated, "Any operator who has more than one at-fault accident is ineligible for automobile coverages with Harleysville. Harleys[ville] does not have a surcharge plan for operators with more than one at-fault accident. This is based on our safe driver insurance

---

1. All subsequent statutory references are to Article 48A.

plan." Nevas protested this decision and was granted a hearing before the Insurance Commissioner pursuant to § 240AA.[2]

---

**2.** Section 240AA provides:

(a) Compliance with article.—Except in accordance with the provisions of this article, no insurer other than the Maryland Automobile Insurance Fund shall (i) cancel or fail to renew a policy of motor vehicle liability insurance or a binder of motor vehicle liability insurance, if the binder is in effect for 45 days or longer, issued in this State, as to any resident of the household of the named insured, for any reason other than nonpayment of premium, or (ii) increase a premium for any coverage on any such policy unless the increase is part of a general increase in premiums approved by the Commissioner and does not result from a reclassification of the insured, or (iii) reduce the coverage under any such policy unless the reduction is part of a general reduction in coverage approved by the Commissioner or to satisfy the requirements of §§ 539 through 541 of this article, inclusive.

(b) Notice to insured.—An insurer intending to take an action subject to the provisions of this section shall, on or before 45 days prior to the proposed effective date of the action, send written notice of its intended action to the insured at his last known address. A written notice of cancellation or nonrenewal shall be sent by certified mail. All other notices of action subject to the provisions of this section shall be sent by certificate of mailing. The notice shall be in triplicate, and shall state in clear and specific terms, on a form approved by the Commissioner:

(1) The proposed action to be taken, including, if the action is an increase in premium or reduction in coverage, the amount of increase and the type of coverage to which it is applicable, or the type of coverage reduced and the extent of the reduction;

(2) The proposed effective date of the action;

(3) The insurer's actual reason or reasons for proposing to take such action. The statement of reasons shall be sufficiently clear and specific so that a person of average intelligence can identify the basis for the insurer's decision, without making further inquiry. Generalized terms such as "personal habits", "living conditions", "poor morals", or "violation or accident record" shall not suffice to meet the requirements of this section;

(4) If there is coupled with the notice an offer to continue or renew the policy in accordance with § 240C–1 of this subtitle, the name of the person or persons to be excluded from coverage, and the premium amount if the policy is continued or renewed with such person or persons excluded from coverage;

(5) The right of the insured to replace the insurance through the Maryland Automobile Insurance Fund, and the current address and telephone number of the Fund;

(6) The right of the insured to protest the proposed action and request a hearing thereon before the Commissioner by signing 2

copies of the notice and sending them to the Commissioner within 30 days after the date of mailing of the notice;

(7) That if a protest is filed by the insured, the current insurance will remain in effect until a determination is made by the Commissioner upon payment of any lawful premium due or becoming due prior to the determination; and

(8) The authority of the Commissioner to award reasonable counsel fees to the insured for services rendered to the insured in connection with any such hearing if he finds the proposed action of the insurer to be unjustified.

(c) Statement of reasons privileged.—Any statement of reasons contained in the notice given pursuant to subsection (b)(3) of this section shall be privileged and may not constitute grounds for any action against the insurer or its representatives or any person who in good faith furnishes to the insurer the information upon which the statement is based.

(d) Protest.—An insured shall have the right to protest the proposed action of the insurer by signing 2 copies of the notice and sending them to the Commissioner within 30 days after the date of mailing of the notice. The Commissioner shall, upon receipt of a protest, notify the insurer of the filing of the protest.

(e) Stay of proposed action.—A protest duly filed shall stay the proposed action of the insurer pending a final determination by the Commissioner, and the insurer shall maintain in force the same coverage and premium in effect on the day the notice of proposed change was sent until the final determination is made, provided that any lawful premium due or becoming due prior to the determination is paid.

(f) Dismissal of protest; hearing on protest.—Based upon the information contained in the notice, the Commissioner shall determine whether the protest has merit and shall either dismiss the protest or disallow the action of the insurer. The Commissioner shall promptly notify the insurer and the insured in writing of his action. Within 30 days after the date of mailing of the Commissioner's notice of action, the aggrieved party may request a hearing. The Commissioner shall conduct a hearing within a reasonable time after the request and shall give not less than 10 days written notice of the time and place of the hearing. At the hearing the insurer has the burden of proving its proposed action to be justified, and, in doing so, may rely only upon the reasons set forth in its notice to the insured.

(g) Commissioner's decision after hearing; delegation of Commissioner's powers and duties.—The Commissioner shall issue an order within 30 days after termination of the hearing. If the Commissioner finds the proposed action to be justified, he shall dismiss the protest and allow the proposed action to be taken on the later of (i) its proposed effective date, or (ii) 30 days after the date of the determination. If the Commissioner finds the proposed action to be unjustified, he shall disallow the action, and may, in addition, order the insurer to pay reasonable counsel fees incurred by the insured for representation at the hearing as he may deem appropriate. The Commissioner may delegate the duties and powers conferred in this section to 1 or more employees or hearing examiners.

The hearing was held on June 17, 1988, before Hearing Officer Tyrone Press. At this hearing, Nevas argued that she was not at fault in the December 10, 1986 accident and that the claim brought against her by the driver of the other car involved in the accident, John Guay, should not have been paid. Therefore, she contended that she should have been charged with just one at-fault accident and her insurance policy should be renewed.

Nevas testified at the hearing. Giving her version of the 1986 accident in issue, she stated that she came to an intersection, stopped at a stop sign and looked both ways before proceeding. She said her car was struck in the middle of the intersection by another car coming from her left that was driven by Guay at an excessive rate of speed. Nevas was given a traffic citation for failing to yield the right of way. Guay was cited for operating his vehicle at an unreasonable speed. She further related that she reported the accident to Harleysville who informed her that Guay had filed a claim against her. On May 19, 1987, a Harleysville claims adjustor, Tony Doyle, told Nevas that the police report of the accident had just arrived, that it was in Nevas's favor, and that because of it Harleysville would not pay Guay's claim. Nevas further testified that she was also told by another Harleysville claims adjustor, Tim Ianuzzi, that the evidence in the police report of Guay's excessive speed (a 40 foot skid mark in a 25 mile per hour zone) and his traffic citation for unreasonable speed precluded his recovery. Ianuzzi told Nevas that Guay's claim would be denied. On October 23, 1987, she was notified that Harleysville had paid the claim against her on May 22, 1987, three days after she had been told it would not be paid. Less than three months later she received the notice that her insurance would not be renewed because of two "at-fault accidents."

---

(h) Appeal.—Any party may appeal the decision of the Commissioner in accordance with § 40 of this article.

Harleysville called two witnesses at the hearing, Doreta Harz and Harold Link. Harz testified that based on data developed by the California Department of Motor Vehicles and Harleysville's own internal study, Harleysville is unable to maintain a surcharge to encompass the risk produced by drivers with more than one at-fault accident in a three year period. Link, a claim supervisor of Harleysville, testified that Nevas's file indicated that she was charged with two at-fault accidents and that "in both cases there was full, adequate and detailed investigation by our claims staff. We feel that, beyond a doubt, the insured was liable for the damage which resulted from these accidents and we use that as our basis for charging the insured with these two accidents." When Nevas challenged Harleysville's decision to pay, Link responded that it is not necessary for an insurance company to justify to the Insurance Commissioner its decision to pay a claim: "The insurance contract indicates that we will settle or defend as we consider appropriate any claim or suit asking for these damages." Link also testified that he did not supervise the claim, that he did not bring the entire claim file with him to the hearing and that he did not know for certain who decided to pay the claim, but he thought it was Ianuzzi. When pressed by Nevas for the reason Harleysville decided to pay the claim, he responded "a decision was made based on the evidence available to us that we should pay for the damage arising out of this occurrence. That was the reason." When pressed further, Link said

> The evidence relied upon by Mr. Ianuzzi were the submissions by both parties and the clear and uncontested evidence that our policyholder failed to yield the right of way by virtue of pulling from (inaudible) into the path of the vehicle which had the right of way. This is an objective fact, it was not contested. The third party[3] indicated that the insured did not make any attempt to

---

3. An apparent reference to the party subrogated to Guay's rights against Nevas.

stop but came through the stop sign and struck the vehicle.

When asked why the claim was paid in light of the evidence of contributory negligence on the part of Guay, Link responded

there was nothing that we found that convincing to rebut a presumption of liability arising from physical acts of the accident. In this case our insured came from the ... traffic control device, was negligent by virtue of statute and the quantum of evidence that was available to us was not sufficient to rebut that.

According to the police report, Guay was given a traffic citation for unreasonable speed and Nevas was given a traffic citation for failure to yield the right of way. The report indicated that the speed limit was 25 miles per hour and that Guay's automobile left a 40 foot skid mark and Nevas's a 10 foot skid mark. The reporting officer did not witness the accident.

In ruling in favor of Harleysville, the hearing examiner found that Nevas's driving record properly reflected two at-fault accidents and that Harleysville produced sufficient statistical data to show that they were unable to insure drivers with two at fault accidents.

Nevas appealed this decision, and the Circuit Court for Baltimore City reversed. Judge Heller ruled that the Insurance Commissioner's decision that Nevas had two at-fault accidents was "not supported by any facts in the record." The court noted that in order to affirm the Insurance Commissioner Harleysville had to present

facts which indicated how they investigated and the reasons they decided to pay the claim and those facts weren't there. There was a conclusion and the conclusion was something to the effect "without doubt she was at fault because the police record indicates she failed to yield the right of way," but, of course, the police record also indicated the other driver was driving at excessive

speed and the police record also indicated skid marks and also the police officer wasn't an eyewitness ...

While the court found the statistical data presented by Harleysville to be sufficient, there was "an absence in the record of how that standard was applied to this individual claimant." Specifically, the court found that "there are no facts on this record for this Court to determine how Harleysville made a determination that the December 10, 1986 accident was at fault or chargeable ..." Because "there must be some basis in the record [to show] how Harleysville reached its decision," the court reversed the decision and remanded the case to the Insurance Commissioner for further proceedings. Harleysville and the Insurance Commissioner appealed.

Appellants make the same argument before this court that they did below: that an insurer is under no obligation to present evidence to the Insurance Commissioner of its at-fault determination. Appellants argue that the right of Harleysville to make a unilateral at-fault determination is reserved in the policy it issued to the insured and is wholly insulated from judicial review. The only burden on Harleysville, appellants submit, is to "demonstrate that a reasonable relationship exists between its underwriting standards and its economic and business purposes." On the other hand, Nevas argues that in addition to requiring the insurer to show a reasonable relationship between its underwriting standards and its economic and business purposes, the insurer must also show how these standards are applied to the insured. It is the application of these standards to the insured that Nevas argues is lacking in the record.

Two provisions of the Insurance Code are relevant in determining the burden on an insurer in a hearing before the Insurance Commissioner to protest a proposed cancellation or non-renewal. Both § 234A and § 240AA limit an insurer's power to cancel or non-renew an insurance policy, including automobile liability insurance. Under § 234A, it is unlawful to cancel, renew or refuse to underwrite a policy "based in whole or in part on race, color, creed, sex, or for

any arbitrary, capricious or unfairly discriminatory reason." *Lumbermen's Mut. Casualty Co. v. Insurance Comm'r,* 302 Md. 248, 253–54, 487 A.2d 271 (1985). While originally enacted to prevent discriminatory underwriting, its amendment by Ch. 752 of the Acts of 1974 broadened the scope of the statute "far beyond" its original purpose. *Id.* The statute now contains the following provision:

> No insurer, agent or broker may cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards which are reasonably related to the insurer's economic and business purposes. At any hearing to determine whether there has been a violation of this section, the burden of persuasion shall be upon the insurer to demonstrate that the cancellation, or refusal to underwrite or renew is justified under the standards so demonstrated.

Recently, this Court, in *Crumlish v. Insurance Comm'r,* 70 Md.App. 182, 190, 520 A.2d 738 (1987), quoting *Lumbermen's,* 302 Md. at 254, 487 A.2d 271, and the legislative history contained therein, explained that § 234A as amended "clearly requires that [the insurer] demonstrate objectively 'the probability of a direct and substantial adverse effect upon losses or expenses of the insurer in light of the approved rating plan or plans of the insurer then in effect ...'" (emphasis omitted). This Court went on in *Crumlish,* 70 Md.App. at 190, 520 A.2d 738, to say that at a minimum, § 234A requires the insurer to produce facts which answer the following questions:

1. What is the statistical basis for the supposition that an individual with the particular number of chargeable losses within the prescribed period is more likely to have another chargeable loss within the next period than a person with fewer chargeable losses?

2. How valid is any such statistical evidence?

3. If there is statistical validity to the supposition, what direct and substantial adverse effect would it have upon the insurer's losses and expenses in light of its current approved rating plan?

In addition to the substantive limitation on an insurer's underwriting decisions imposed by § 234A, § 240AA prescribes procedures and procedural limitations on those decisions. *Lumbermen's,* 302 Md. at 255, 487 A.2d 271. Of particular relevance here is subsection (f) of § 240AA which provides that: "... At the hearing the insurer has the burden of proving its proposed action to be justified, and, in doing so, may rely only upon the reasons set forth in its notice to the insured." The meaning of the term "justified" and of subsection (f) of § 240AA was at issue in *Government Employees Ins. v. Insurance Comm'r,* 273 Md. 467, 330 A.2d 653 (1975), where the Court of Appeals held that under § 240AA(f) "the insurer must establish that its assigned reason is an actual one, that is, genuine; and that the facts on which it is based are true." *Id.* 273 Md. at 483, 330 A.2d 653. That a genuine reason actually exist, the Court held, is a "necessary implication of the provision [in § 234A] that a non-renewal not be 'for any arbitrary, capricious or unfairly discriminatory reason.'" *Id.*

█ It seems clear then that merely presenting the statistical data required by § 234A and *Crumlish* is not sufficient where, as here, the insurer's reason for not renewing the insured's policy is that insured was deemed by the insurer to have been at fault in an accident. Section 240AA requires that an insurer explain the basis for its conclusion that the insured was at fault.

█ In the case *sub judice,* Judge Heller's review was limited to an examination of the record for "substantial evidence" to support the decision of the hearing officer, *Lumbermen's Mut. Casualty v. Insurance Comm'r,* 302 Md. 248, 266, 487 A.2d 271 (1985), i.e. "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* This standard of review "is narrow in scope and the decision of the administrative agency carries a presumption of validity." *Doctor's Hosp. v. Maryland Health Resources,* 65 Md.App. 656, 667, 501 A.2d 1324 (1986). In applying this test, a reviewing court

should not substitute its judgment for the expertise of the agency from which the appeal is taken. *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 513, 390 A.2d 1119 (1978). Cognizant of this standard, Judge Heller found the evidence lacking. Harleysville produced no witnesses who either were involved in making the decision to pay the claim against Nevas or could explain why the claim was paid. The only relevant evidence produced was the police report, which, as Judge Heller pointed out, was written by an officer who was not an eyewitness to the 1986 accident in issue and indicated that the other driver was traveling at an excessive rate of speed.

We agree with Judge Heller. Although the scope of substantial evidence review is narrow, it is incumbent upon reviewing courts to "examine all inferences and factual conclusions drawn by the agency to make sure that they reasonably follow from facts. We must also examine all facts found by an agency to insure that there was evidence to support them." *Doctor's Hosp. v. Maryland Health Resources*, 65 Md.App. 656, 667, 501 A.2d 1324 (1986). Harleysville produced no evidence at the hearing to support the agency's finding that Harleysville was justified in refusing to renew Nevas's policy because she was at fault in the 1986 accident. Harleysville has the burden of explaining the basis for its payment of the Guay claim, and only if that basis was genuine can its non-renewal be justified. Moreover, until Harleysville provides evidence to support its assigned reason for the proposed non-renewal of Nevas's policy, there can be no meaningful judicial review of the agency's conclusion as to whether that proposed non-renewal was arbitrary or capricious. We affirm the ruling of the circuit court, reversing and remanding the case to the Insurance Commissioner for further proceedings.[4]

---

4. Nevas in a cross-appeal argues that the case should not be remanded to the Insurance Commissioner, but reversed outright. The circuit court ruled that remand was necessary, and that is a determination within its discretion which we will not disturb. § 40(5). We also reject the cross-appellant's contention that the court erred in limiting

**560**

JUDGMENT AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.

its remand for a determination by the Commissioner of whether Harleysville was justified in concluding that Nevas was at fault in the 1986 accident.