Charles B. PRENTISS, III and Margaret O. Prentiss, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. Civ.1:99CV43.**

United States District Court, W.D. North Carolina, Asheville Division.

Nov. 9, 1999.

Allan R. Tarleton, Asheville, NC, for plaintiffs.

Joseph P. McGuire, Asheville, NC, Mark L. Hanover, Steven M. Levy, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER OF REMAND

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendant's Motion to Dismiss and/or for Summary Judgment for a recommendation as to disposition. Both Defendant and Plaintiffs filed timely objections to the Memorandum and Recommendation. The Court affirms the recommendation and remands this action to state court.

### I. STANDARD OF REVIEW

■ The Court reviews *de novo* those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. 28 U.S.C.

§ 636(b). The Court will not address general objections to the Magistrate Judge's final Recommendation. In this Circuit, *de novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). "The district judge must not be a rubber stamp" and "has a duty to reject the Magistrate Judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 Wright & Miller, *Federal Practice and Procedure* § 3070.2 (1997). Those parts of a Magistrate Judge's Memorandum and Recommendation to which no specific objections are filed are given careful review. *Orpiano*, 687 F.2d at 47.

## II. STATEMENT OF FACTS

Plaintiffs Charles B. Prentiss and Margaret O. Prentiss are the named Plaintiffs in a class action suit brought against Defendant Allstate Insurance Company, an Illinois insurance company authorized to do business in North Carolina. Plaintiffs allege that Defendant, their automotive insurer, improperly increased their insurance premiums based on an accumulation of points under North Carolina's Safe Driver Incentive Plan ["SDIP"]. Plaintiffs contend this increase was improper under the Constitution of North Carolina due to the absence of a judicial adjudication of fault against them. The purported class of persons is comprised of all drivers in North Carolina insured by Defendant who had their "safe driver discount" removed without a judicial finding of fault. Complaint, at ¶ 2.

On September 22, 1997, Mr. Prentiss was involved in a motor vehicle accident on U.S. Highway 276 in Haywood County, North Carolina. Id., at ¶ 13. Patricia N. Former of Woodruff, South Carolina, drove the other vehicle involved in the accident. Neither driver was injured, but both vehicles were damaged. *Id.* Mr. Prentiss was charged in a citation with operating a motor vehicle "[b]y failing to see before turning from a direct line that such movement could be made in safety." *Id.* Mr. Prentiss contested the charge and the District Court of Haywood County dismissed it with no adjudication. *Id.*, at ¶ 14.

Plaintiffs are insured under a motor vehicle liability policy issued by Defendant and had been insured under that policy for more than six months prior to the September 22, 1997, accident. *Id.*, at ¶ 15. Following the accident, which involved property damage in excess of $2,000, Defendant determined that Mr. Prentiss had been at fault. *Id.*, at ¶ 16. Pursuant to the North Carolina SDIP and the North Carolina General Statutes, Defendant eliminated Plaintiffs' "safe driver discount" and imposed a premium surcharge of three points. *Id.* Mr. Prentiss has continued to pay the increased premiums under protest. *Id.*, at ¶ 17.

## III. PROCEDURAL HISTORY

Plaintiffs filed a class action complaint in Haywood County Superior Court on February 1, 1999. The Complaint, which names only Allstate as a Defendant, effectively seeks a declaration that the North Carolina SDIP is unconstitutional under the state constitution. In addition, Plaintiffs seek reimbursement of the increased premium payments, injunctive relief restricting Defendant's ability to impose increased premiums, and attorney's fees. Plaintiffs seek this relief under three legal theories; first, Plaintiffs argue that the determination of liability or fault by Defendant, a private insurer, was an unconstitutional delegation of judicial power prohibited by Article IV, Section 1 of the Constitution of the State of North Carolina. *Id.*, at ¶ 18. Second, Plaintiffs complain that the "imposition of increased premiums without adjudication of fault is an unconstitutional civil penalty" prohibited by Article I, Section 19 of the Constitution of North Carolina. *Id.* Finally, Plaintiffs contend, on information and belief, that the North Carolina Rate Bureau has not "provided reasonable means approved by the Commissioner of Insurance where-

by any person who disputes his insurer's determination that he or she was at fault in an accident may be heard as required by North Carolina General Statute 58–36–1(2) and 58–36–65(h)." *Id.*

On notice by Defendant asserting complete diversity and an amount in controversy in excess of $75,000, the matter was removed to this Court on March 11, 1999. Defendant then filed a Motion to Dismiss and/or for Summary Judgment on April 7, 1999. Magistrate Judge Cogburn issued his Memorandum and Recommendations on July 9, 1999, recommending that the Court abstain from the matter under the *Burford* doctrine, or, in the alternative, grant Defendant's Motion to Dismiss.

Defendant filed a Motion for Reconsideration of the Magistrate Judge's recommendation on July 22, 1999, contending that abstention was improper. Plaintiffs timely filed an objection to the recommendation on July 26, 1999, taking issue with both the recommendation to abstain and the alternative recommendation to grant the Motion to Dismiss. On reconsideration, the Magistrate Judge did not substantively alter his recommendations. Order, filed August 5, 1999 (granting motion for reconsideration of Memorandum and Recommendation). Defendant timely filed an objection to the Memorandum and Recommendation on August 11, 1999.

## IV. DISCUSSION

### A. Burford Abstention

■ Plaintiffs bring a state constitutional challenge to a statute which deals with the regulation of North Carolina's automobile insurance scheme. Federal courts should abstain from deciding questions of state law when federal review would disrupt a state's efforts to establish a coherent policy on a matter of substantial importance to a state. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The decision to abstain from exercising otherwise proper jurisdiction may and should be raised by the Court *sua sponte.*[1] *Pomponio v. Fauquier County Bd. of Sup'rs*, 21 F.3d 1319, 1320 (4th Cir.1994) (affirming district court's *sua sponte* dismissal of action after abstaining from exercising jurisdiction), *implicitly overruled on other grounds*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

■ In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a federal district court, siting in equity may, in its discretion, "decline to exercise its jurisdiction in certain circumstances if abstention is necessary to show proper regard for a state government's domestic policy." *Pomponio*, 21 F.3d at 1324 (citing *Burford*, 319 U.S. at 317–18, 63 S.Ct. 1098). The Supreme Court later refined the requirements for a district court to abstain under *Burford* :

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there

---

1. Defendant sought removal of this matter under diversity jurisdiction pursuant to 28 U.S.C. § 1332. Although there is no question that complete diversity exists in this case, the Court has great doubts that the amount in controversy threshold has been met. Because Plaintiffs made no claim for a specific amount of damages in the Complaint, Defendant bears the burden of showing by a preponderance of the evidence that the amount will exceed $75,000. *Sayre v. Potts*, 32 F.Supp.2d 881 (S.D.W.Va.1999). The amount in controversy may be measured by the pecuniary result to either the plaintiff or defendant. *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir.1964). Defendant claims that if Plaintiffs obtain the injunctive relief sought in this lawsuit, Defendant would have to modify its computer systems, a task requiring labor expenses in excess of $400,000. Notice of Removal, filed March 11, 1999, at ¶ 12; Declaration of Adam J. Kreuser, filed March 11, 1999, at ¶ 3. However, this Court has doubts about the remoteness of such expenses and whether they should be attributable to any judgment in this case. Nonetheless, the Court does not choose to dispose of the case on this issue. For the purpose of determining jurisdiction, the Court assumes that the amount in controversy is satisfied.

are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI") (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236). The Supreme Court in *NOPSI* held that a *Burford* abstention was not proper in that case. However, the Court noted that "[t]his case does not involve a state-law claim, nor even an assertion that [the] federal claims are in any way entangled in a skein of state law that must be unraveled before the federal case can proceed." *Id.,* 491 U.S. at 350–51, 109 S.Ct. 2506. Keeping in mind that no federal claims or issues are involved in the instant matter, the Court looks to the test set forth by the Supreme Court in *NOPSI.*

### 1. Timely and adequate state court review

The first step in the *Burford* abstention analysis is whether "timely and adequate state-court review" is available. *Riley v. Simmons,* 45 F.3d 764, 771 (3rd Cir.1995). "Only if a district court determines that such review is available, should it turn to the other issues . . . ." *Id.* The Court finds "timely and adequate state-court review" is available to Plaintiffs under existing North Carolina law.

The North Carolina Administrative Procedure Act ("APA") provides detailed procedures for administrative review of agency actions followed by centralized judicial review. N.C.Gen.Stat. §§ 150B–1, 150B–64. The North Carolina Department of Insurance is considered an agency and is therefore subject to the provisions of North Carolina's APA. *See e.g., In re Matter by McCrary,* 112 N.C.App. 161, 435 S.E.2d 359 (1993). After informal attempts to settle a dispute between an agency and another person have failed, "either the agency or the person may commence an administrative proceeding to determine the person's rights, duties, or privileges, at which time the dispute becomes a 'contested case.'" N.C.Gen.Stat. § 150B–22. After a final administrative decision, the aggrieved person is entitled to judicial review in the Superior Court of Wake County. *Id.,* at §§ 150B–43, 45.[2] Appeal from that court's decision is to the appellate division of North Carolina. *Id.,* at § 150B–52.

Moreover, under North Carolina law, Plaintiffs may be able to bypass administrative review and seek direct relief from the court. "Where an aggrieved party challenges the constitutionality of a regulation or statute, administrative remedies are deemed to be inadequate and exhaustion thereof not required." *Shell Island Homeowners Ass'n, Inc. v. Tomlinson,* 517 S.E.2d 406, 412 (N.C.App. Jul.20, 1999) (citing *Meads v. N.C. Dept. of Agric.,* 349 N.C. 656, 509 S.E.2d 165 (1998)). In *Meads,* the North Carolina Supreme Court pointed to "our well-settled rule that a statute's constitutionality be determined by the judiciary, not an administrative board." *Id.,* at 670, 509 S.E.2d at 174; *see also Great Am. Ins. Co. v. Gold,* 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961) ("The question of constitutionality of a statute is for the judicial branch"); *In re Appeals of Timber Cos.,* 98 N.C.App. 412, 415, 391 S.E.2d 503, 505 (1990) ("Property Tax Commission is without authority to rule on the constitutionality of [statute]"); *Johnston v. Gaston County,* 71 N.C.App. 707, 713, 323 S.E.2d 381, 384 (1984) ("constitutional claims will not be acted upon by administrative tribunals"). Whether

---

2. In addition to the specific administrative and judicial review provided by statute, the APA ensures that "[n]othing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article." N.C.Gen.Stat. § 150B–43.

Plaintiffs in this case must initially seek an administrative resolution, or are entitled to directly settle their grievances in state court, Plaintiffs have access to timely and adequate state-court review as required by *Burford.*

### 2. Coherent State Policy and the Public Interest

■ After finding that "timely and adequate state-court review" exists, the Court is directed by *NOPSI* to determine whether either: 1) difficult questions of state law exist which affect policy problems of substantial public import; or 2) federal review would disrupt state efforts to establish a coherent policy in an area of public interest. 491 U.S. at 361, 109 S.Ct. 2506. The Court finds that federal review of the question in this case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.[3] *Marks v. Snedeker,* 612 F.Supp. 1158 (D.N.J.1985). In *Marks,* a pre-*NOPSI* case almost identical to the instant matter, the plaintiffs challenged the constitutionality of New Jersey's automobile insurance law under both the federal and state constitutions. In particular, plaintiffs found fault with the retroactive surcharge system created by the New Jersey legislature. In their class-action complaint, the plaintiffs sought a declaration that the statute was unconstitutional, an injunction against its enforcement, and the return of additional premiums paid by the insureds. *Id.,* at 1158. The district court found that in order to address the constitutional claims, the court would be required to interpret the state statutes, an action that "could have a significant disruptive effect on New Jersey's newly reformed automobile insurance program which is unquestionably a 'matter of substantial public concern.'" *Id.,* at 1161 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236). Finding that "adequate and timely state-

court review" was available to the plaintiffs, the judge dismissed the complaint under the *Burford* abstention doctrine. *Id.,* at 1162.

More recently, the Third Circuit dealt with similar issues in a case involving a constitutional challenge to a state regulation and held that abstention was warranted. *Chiropractic America v. Lavecchia,* 180 F.3d 99 (3rd Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 327, 145 L.Ed.2d 255 (1999). *Chiropractic* involved a federal constitutional challenge to certain medical benefits regulations under New Jersey's newly reformed no-fault automobile insurance law. The plaintiffs had sought a declaratory judgment that the state regulations violated the due process and equal protection clauses of the Fourteenth Amendment. Plaintiffs also sought an injunction preventing the State of New Jersey from implementing the regulations. *Id.,* at 102. The Third Circuit upheld the district court's decision to abstain under *Burford,* in which district court found that:

> [T]imely and adequate state court review of the challenged regulations is available to plaintiffs, and that federal judicial review of the challenged regulations of the state regulatory agency may disrupt New Jersey's attempt to ensure a coherent policy in its treatment of the substantial local problem of automobile insurance reform.... [I]t is apparent that the Appellate Division of the Superior Court of New Jersey is the appropriate forum for adjudicating these issues.

*Chiropractic,* 1999 WL 61429 at *1 (D.N.J. 1999). Pointing to the second prong of the test set out by the Supreme Court in *NOPSI,* the Third Circuit found that federal review of the plaintiffs' claims would be disruptive of state efforts to establish a coherent policy with respect to a matter of

---

**3.** The first *NOPSI* prong has also been satisfied, as the Court finds that this matter involves "difficult questions of state law" which bear on a complex state regulatory scheme of substantial importance to the State of North

Carolina. 491 U.S. at 361, 109 S.Ct. 2506. However, the Court chooses to dispose of the matter based only upon the second prong of the *NOPSI* test.

substantial public concern. 180 F.3d at 105. Importantly, the Court noted that automobile insurance has "typically been left to the states to regulate." *Id.,* at 107 (citations omitted). Therefore, despite the plaintiffs' invocation of the federal constitution, *Burford* abstention was proper and state court was the appropriate forum for the plaintiffs' claims. *Id.,* at 107–08; *but see Dittmer v. County of Suffolk,* 146 F.3d 113 (2d Cir.1998) (where the plaintiffs raise only federal claims in a direct facial challenge to the constitutionality of a state statute, *Burford* abstention is not warranted). Because the Court chose to abstain under *Burford* and therefore did not exercise jurisdiction, it did not address the defendant's motion to dismiss under Fed. R.Civ.P 12(b)(6). *Chiropractic,* 1999 WL 61429 at *4.

Federal courts in both *Marks* and *Chiropractic* cited *Burford* in refusing to review *federal* constitutional challenges to aspects of state automobile insurance schemes. This case presents an even more compelling argument for *Burford* abstention because Plaintiffs here rely entirely on the North Carolina constitution and assert no federal constitutional challenges or claims. As in *Marks* and *Chiropractic,* federal review of this case could have a significant disruptive effect on North Carolina's automobile insurance scheme, an area of substantial public concern. Indeed, federal courts have admitted that there is no federal interest in the regulation of automobile insurance, an area in which Congress has deferred to the states. *Lac D'Amiante du Quebec v. American Home Assurance Co.,* 864 F.2d

1033, 1038–39 (3rd Cir.1988) (discussing the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, which provides for exclusive state regulation of the business of insurance). Likewise, the North Carolina Supreme Court has noted that the insurance business is "charged with a public interest." [4] *State ex rel. Hunt v. North Carolina Reinsurance Facility,* 302 N.C. 274, 275 S.E.2d 399 (1981) (upholding the legality of recoupment surcharges imposed by insurance companies on certain motor vehicle insurance policyholders). In addition, similar challenges to automobile insurance schemes in other states have been dealt with in state court. *See e.g., DiLoreto v. Fireman's Fund Ins. Co.,* 383 Mass. 243, 418 N.E.2d 612 (1981) (upholding the delegation of authority in a merit rating system which allows private insurers to assess surcharges when the insurer determines the insured was in excess of 50% at fault); *Insurance Comm'r v. Nevas,* 81 Md.App. 549, 568 A.2d 1144 (1990) (subject to appropriate judicial review, a private insurer is able to determine whether insured was at fault in an accident and refuse to renew the policy accordingly). Based on the application of the Supreme Court test set out in *NOPSI,* the lack of any federal claims or interests in this matter, and the importance of the state's interest in regulating the automobile insurance industry, *Burford* abstention is warranted.

However, both parties contend that *Burford* abstention would be inappropriate. Defendant argues that *Burford* abstention is improper because Plaintiffs seek monetary damages. Indeed, the Su-

---

**4.** The North Carolina Supreme Court further explained that:

Indeed, the public demands the effective regulation of the insurance industry. Our Legislature, therefore, is presented with no enviable task. It must, as our statutory architect, evolve a plan which will best protect the public interest and ensure the liquidity and solvency of participating insurance companies in our state who must also be assured of a reasonable profit. This balancing of equities between the consuming public and the commercial sector can

be done only by the legislative branch and the plan can be effectively administered only with the full cooperation of the executive branch of government. Most importantly, the Legislature, in formulating a regulatory scheme, should employ words that clearly and accurately reflect its intent so that the courts of this state will have some much needed guidance in interpreting those laws.

*State ex rel. Hunt,* 302 N.C. at 297, 275 S.E.2d at 410–11.

preme Court has held that where plaintiffs seek monetary damages only, *Burford* abstention does not apply and the court must retain jurisdiction. *Quackenbush*, 517 U.S. at 731, 116 S.Ct. 1712. However, where the monetary damages sought are dependent on the equitable or declaratory relief, such as declaring a state law unconstitutional, abstention is still warranted. *Id.*, at 719, 116 S.Ct. 1712 (citing *Fair Assessment in Real Estate Assn., Inc. v. McNary*, 454 U.S. 100, 115, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), in which the Supreme Court found abstention proper in an action for damages where the federal court would first have to declare a state tax scheme unconstitutional). Here, Plaintiffs' recovery of the premiums paid to Allstate under the SDIP depends on this Court first declaring that a state regulatory scheme violates the North Carolina constitution. Defendant focused on the importance of the declaratory and injunctive aspects of the relief sought by Plaintiffs, stating in its removal petition that the "[c]omplaint seeks far-reaching declaratory and injunctive relief that would require Allstate to fundamentally alter its business practice throughout the state of North Carolina." Notice of Removal, filed March 11, 1999, at ¶ 11. Furthermore, Defendant specifically relied on the equitable relief sought by Plaintiffs in establishing that the amount in controversy was satisfied. *Id.*, at ¶'s 11–12. Without meeting that amount, this case would not have reached federal court in the first place. Thus, the Court rejects Defendant's arguments that Plaintiffs can somehow be awarded monetary damages without first obtaining the equitable relief sought. Because Plaintiffs' claims for damages are dependent on the equitable relief sought, *Quackenbush* is not applicable. 517 U.S. at 719, 116 S.Ct. 1712.

Defendant also contends that where initial agency review of a claim is warranted, *Burford* abstention is unnecessary. Defendant focuses on the filed rate doctrine, recently adopted by the North Carolina Supreme Court in *N.C. Steel, Inc. v. Nat'l Council on Compensation Ins.*, 347 N.C. 627, 496 S.E.2d 369 (1998), and argues that this Court should not reach the question of *Burford* because the filed rate doctrine controls. In particular, Defendant relies on *Morales v. Attorneys' Title Insurance Fund*, 983 F.Supp. 1418 (S.D.Fla.1997).

> First, as pointed out by the court in *Morales, supra*, *Burford* abstention and the filed rate doctrine (as well as the exhaustion of administrative remedies and primary jurisdiction doctrines) are simply "variations on the same theme." 983 F.Supp. at 1429–30. So, where, as here, a federal court is not being called on to substantively decide the case, but instead can simply remand a matter to an agency to make the initial determination, under the filed rate/exhaustion of remedies/primary jurisdiction doctrines, there is no need for the court to invoke *Burford* abstention. That is why, in *Morales*, the court dismissed the plaintiffs' claims on the filed rate doctrine ground, as opposed to remanding them to the state court based on *Burford. Id.*

Defendant's Objections to Portion of Magistrate Judge's Memorandum and Recommendation and Subsequent Reaffirmance Upon Reconsideration, filed August 11, 1999, at 4–5. However, Defendant's reliance on *Morales* is misplaced, as that court only considered the filed rate doctrine *after* addressing and rejecting the *Burford* abstention issue.

> Based on the foregoing considerations, the Court concludes that *Burford* abstention is inappropriate with respect to the plaintiffs' ... claims, which after dismissal of the prayers for injunctive relief, constitute suits for money damages. [and thus *Quackenbush* controls] Therefore, the Court proceeds to address the defendants' *substantive* arguments in support of dismissal of the ... claims. The first of these arguments, which the Court finds dispositive, is that the filed rate doctrine bars the plaintiffs' ... claims.

*Morales*, 983 F.Supp. at 1425–26 (emphasis added). Because this Court abstains, it

will not address substantive arguments. *Chiropractic*, 180 F.3d at 108 (upholding district court's abstention under *Burford* without addressing motion to dismiss).

Defendant points to three other cases in support of the argument that federal courts routinely dismiss claims based on the filed rate doctrine without reaching the issue of *Burford*.[5] However, those cases are distinguishable because they all involved federal RICO claims. Because of the important federal interests involved, those courts were perhaps reluctant to abstain under *Burford*. Regardless, the Fourth Circuit has not held that a district court may properly dispose of a case, via the filed rate doctrine, prior to determining whether it should exercise jurisdiction in the first place. This Court will not do so now.

Despite initially bringing this lawsuit in North Carolina state court, Plaintiffs now resist a remand under *Burford*, arguing that abstention is inappropriate because their Complaint only presents a constitutional challenge to state statutes. Because they claim not to find fault with any specific agency action,[6] Plaintiffs conclude that federal review would have no impact on a state regulatory scheme, and thus, *Burford* abstention is not necessary. However, a brief examination of the North Carolina Insurance Code and the SDIP suggests otherwise.

Membership in the North Carolina Rate Bureau ("NCRB") is a prerequisite for an insurance company to write insurance in North Carolina. N.C.Gen.Stat. § 58–36–5.

Under the supervision of the Commissioner of Insurance, the NCRB files rate classification plans which make factual distinctions between motor vehicle drivers for insurance purposes. N.C.Gen.Stat. § 58–36–65(a). Part of this classification system is the SDIP which uses a point system to classify drivers according to their driving records. N.C.Gen.Stat. § 58–36–65(b). Pursuant to these statutory directions, the NCRB established the general rules and rates for the SDIP, including an elaborate set of instructions that insurance companies must follow in assigning points to drivers.[7] According to the SDIP Rules, insurers *shall* assign Driving Record Points ("Points") for either moving traffic violation convictions *or* at-fault accidents.[8] SDIP Rule 5(B)(1), NC–GR–6. The SDIP defines "at-fault" as "negligent" and states "[n]o points shall be assigned for accidents when the operator of an insured vehicle is free of negligence." SDIP Rule 5(B)(1)(b) n. 3, NC–GR–7. Thus, private insurers are directed by the SDIP Rules to make determinations of negligence and fault in automobile accidents even in situations where there is no judicial determination of guilt.

Pursuant to Section 58–36–65(b), the SDIP was filed with and approved by the Commissioner of the Department of Insurance, a North Carolina state agency. The Commissioner's approval of that regulatory scheme constitutes agency action in the eyes of this Court. Therefore, contrary to Plaintiffs' assertions, a state agency has made a decision that grants private insurers the right to make determinations of

---

**5.** *Fersco v. Empire Blue Cross/Blue Shield, of N.Y.*, 1994 WL 445730, *3 n. 1 (S.D.N.Y. 1994); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 495 (8th Cir.1992); *Cullum v. Arkla, Inc.*, 797 F.Supp. 725, 729 (E.D.Ark. 1992).

**6.** Plaintiffs essentially contend the North Carolina Insurance Department is not involved in this controversy because the delegation of authority to private insurers to determine fault was solely the responsibility of the state legislature pursuant to N.C.Gen.Stat. § 58–36–65(h). However, this Court reads that statute as merely specifying the method by which an

aggrieved insured can dispute an insurer's determination of fault in an automobile accident.

**7.** These rules and rates, after approval by the Commissioner, are published by the Insurance Services Office, Inc. ("ISO") in the ISO Manual.

**8.** Where the insured has an at-fault accident and is convicted of a moving traffic violation arising from that same incident, the insurer shall assign only the higher Points between the accident and conviction, but not both. SDIP Rule 5, NC–GR–7.

fault and the exercise of federal jurisdiction here would have an impact on a state agency's regulatory decisions. Because federal review of the SDIP and the statutes on which it is based "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," this Court refrains from doing so. *NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506.

None of the objections put forth by Plaintiffs or Defendant are convincing and this Court will abstain under *Burford* and remand the matter to state court.

## B. Declaratory Judgment

As an alternative holding, this Court will abstain from making a declaratory judgment in the instant matter. The Supreme Court has often acknowledged that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 517 U.S. at 716, 116 S.Ct. 1712 (citations omitted). However, in cases where the relief sought is equitable in nature or otherwise discretionary, "federal courts not only have the power to stay the action based upon abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Id.*, at 707, 116 S.Ct. 1712 (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)).

As noted *infra*, the Second Circuit in *Dittmer* found that *Burford* abstention was improper where plaintiffs challenged the constitutionality of a state statute under the federal constitution. However, the Court also noted that "to the extent that plaintiffs sought a declaratory judgment, the district court had somewhat greater

discretion to abstain." *Dittmer*, 146 F.3d at 118 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (in declaratory judgment actions, district courts have "greater" discretion to abstain "than that permitted under the 'exceptional circumstances' test of *Colorado River* ")). Indeed, the Supreme Court has required federal courts to decline to exercise jurisdiction over certain types of declaratory judgments. *See e.g., Huffman*, 319 U.S. at 297, 63 S.Ct. 1070 (federal court must abstain from hearing declaratory judgment action challenging constitutionality of a state tax); *Wilton*, 515 U.S. at 282, 115 S.Ct. 2137 (federal courts have "discretion in determining whether to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites").

■ Likewise, district courts in the Fourth Circuit have greater discretion to abstain when declaratory relief is sought. *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir.1998) ("district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions."); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir.1996) (same); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937) (same). When a district court is asked to grant declaratory relief, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Centennial*, 88 F.3d at 257 (quoting *Wilton*, 515 U.S. at 288, 115 S.Ct. 2137). Instructive in making such a decision are the factors set out by the Fourth Circuit in dealing with a federal court's decision to abstain where a pending parallel state court action exists.[9]

---

9.  These include:
    (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; [ ](ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ](iii) whether permit-

ting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems ... [and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing".....
*Nautilus*, 15 F.3d at 377 (citations omitted).

*Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 376 (4th Cir.1994). *But see Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998) (holding that a district court may dismiss a declaratory judgment action even when there is no pending parallel state court action).

Plaintiffs here sought a declaration in state court that the delegation of adjudicative power to an automobile insurer is unconstitutional under the North Carolina constitution. The State of North Carolina's interest in having this challenge to its regulatory scheme decided in state court is compelling. As discussed *infra,* there is no federal interest in the regulation of automobile insurance, an area in which Congress has deferred to the states. *Lac D'Amiante,* 864 F.2d at 1039–39. Furthermore, North Carolina state courts can more efficiently resolve this dispute about a complex state regulatory scheme. After carefully considering the factors set out in *Nautilus,* and with an understanding that the Court's power to abstain has limits, this Court is compelled by "considerations of practicality and wise judicial administration" to abstain from making a declaratory judgment in this matter. *Centennial,* 88 F.3d at 257.

## V. CONCLUSION

For the reasons state above, this Court will abstain from deciding this case under the *Burford* abstention doctrine and will remand it to state court. As an alternative ruling, the Court relies on its broad discretionary power to decline jurisdiction in a declaratory judgment action.

## VI. ORDER

**IT IS, THEREFORE, ORDERED** that, for the reasons stated herein, the Court **ABSTAINS** and this matter is hereby **REMANDED** to the General Court of Justice, Superior Court Division of Haywood County, North Carolina, for further proceedings.